1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                      EASTERN DISTRICT OF CALIFORNIA

10

11    EDUARDO QUINTANAR, JR.,                  No. 1:18-cv-01403-TLN-BAM

12                    Plaintiff,

13           v.                                **ORDER**

14    COUNTY OF STANISLAUS, et al.,

15                    Defendants.

16

17          This matter is before the Court on two Motions to Dismiss: (1) Defendants County of

18    Stanislaus ("County"), Birgit Fladager, Marlissa Ferreira, David Harris, Kirk Bunch, Steve

19    Jacobson, and Cory Brown's (collectively, "County Defendants") Motion to Dismiss (ECF No.

20    68); and (2) Defendants City of Modesto ("Modesto") and Jon Evers's (collectively, "City

21    Defendants") Motion to Dismiss (ECF No. 69).[1] Plaintiff Eduardo Quintanar, Jr. ("Plaintiff")

22    opposed each motion.  (ECF Nos. 74, 75.)  Defendants filed replies.  (ECF Nos. 77, 78.)  For the

23    reasons set forth below, the Court GRANTS in part and DENIES in part Defendants' motions.

24    ///

25    ///

26

27    ───────────────────────

      [1]      When the Court discusses County Defendants and City Defendants together, it will refer
28    to them collectively as "Defendants."

                                            1

## I.     FACTUAL AND PROCEDURAL BACKGROUND

On April 2, 2012, an individual named Korey Kauffman ("Kauffman") was reported missing.  (ECF No. 65 at 2.)  On August 14, 2015, officers arrested a prominent criminal defense attorney named Frank Carson ("Carson") on suspicion that he was involved in a murder to hire scheme that resulted in Kauffman's murder.  (*Id.*)  Plaintiff, a California Highway Patrol officer, alleges Defendants arrested him and falsely accused him of participating in a conspiracy to murder Kauffman.  (*Id.*)  The state court dismissed the charges against Plaintiff in October 2017.  (*Id.* at 44.)

Plaintiff filed the instant action on October 11, 2018.  (ECF No. 1.)  Plaintiffs filed the operative Second Amended Complaint ("SAC") on November 18, 2021, alleging various 42 U.S.C. § 1983 claims and state law claims.  (ECF No. 65 at 45–55.)  On January 10, 2022, Defendants filed the instant motions to dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).  (ECF Nos. 68, 69.)

## II.     STANDARD OF LAW

A motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) tests the legal sufficiency of a complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Rule 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009).  Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and quotations omitted).  "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims."  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

On a motion to dismiss, the factual allegations of the complaint must be accepted as true.  *Cruz v. Beto*, 405 U.S. 319, 322 (1972).  A court must give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.  *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963).  A plaintiff need not allege

1  "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to

2  relief." *Twombly*, 550 U.S. at 570 (internal citation omitted).

3       Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of

4  factual allegations." *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986).

5  While Rule 8(a) does not require detailed factual allegations, "it demands more than an

6  unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.  A

7  pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the

8  elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678

9  ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

10  statements, do not suffice.").  Thus, '[c]onclusory allegations of law and unwarranted inferences

11  are insufficient to defeat a motion to dismiss for failure to state a claim." *Adams v. Johnson*, 355,

12  F.3d 1179, 1183 (9th Cir. 2004) (citations omitted).  Moreover, it is inappropriate to assume the

13  plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws

14  in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State*

15  *Council of Carpenters*, 459 U.S. 519, 526 (1983).

16       Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough

17  facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim

18  has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

19  reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at

20  680.  While the plausibility requirement is not akin to a probability requirement, it demands more

21  than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.  This plausibility

22  inquiry is "a context-specific task that requires the reviewing court to draw on its judicial

23  experience and common sense." *Id.* at 679.  Thus, only where a plaintiff fails to "nudge [his or

24  her] claims . . . across the line from conceivable to plausible" is the complaint properly dismissed.

25  *Id.* at 680 (internal quotations omitted).

26       If a complaint fails to state a plausible claim, "'[a] district court should grant leave to

27  amend even if no request to amend the pleading was made, unless it determines that the pleading

28  could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122,

1130 (9th Cir. 2000); *see Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in denying leave to amend when amendment would be futile).  Although a district court should freely give leave to amend when justice so requires under Rule 15(a)(2), "the court's discretion to deny such leave is 'particularly broad' where the plaintiff has previously amended its complaint."  *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).

### III.   ANALYSIS

County Defendants move to dismiss for the following reasons: (1) Plaintiff's claims against the Fladager, Harris, and Ferreira that rely on conduct prior to October 11, 2016, are time-barred; (2) Plaintiff's claims against Harris are time-barred; (3) Plaintiff's retaliatory prosecution and *Monell* claims are time-barred; (4) Plaintiff's claims against Fladager, Harris, and Ferreira in their roles as administrators, supervisors, or investigators are time-barred; (5) official capacity suits are redundant to the claims against the County; (6) Plaintiff's claims against Fladager, Harris, and Ferreira in their roles as prosecutors should be dismissed; (7) Plaintiff fails to state a Fourth Amendment claim for unlawful search and seizure based on judicial deception; (8) Plaintiff lacks standing to bring a retaliatory prosecution claim and fails to state such a claim; (9) Plaintiff fails to state a  Fourteenth Amendment claim; (10) Plaintiff fails to adequately plead facts to support a *Monell* claim; (11) Plaintiff fails to state a claim under California Civil Code § 52.1, and Fladager, Harris, and Ferreira are immune from liability for the acts of others pursuant to California Government Code § 820.8; and (12) Defendants are entitled to immunity under California Civil Code § 47 on Plaintiff's defamation claim.  (ECF No. 68-1.)

City Defendants move to dismiss for the following reasons: (1) the SAC constitutes a shotgun pleading; (2) Plaintiff fails to state a § 1983 claim against Evers for malicious or retaliatory prosecution; (3) Plaintiff's claim that Evers was involved in a conspiracy to violate his rights fails; (4) Evers is entitled to qualified immunity; and (5) Plaintiff's state law claims fail as a matter of law.  (ECF No. 100.)

The Court will address the parties' arguments in turn.  To the extent Defendants' arguments overlap, the Court addresses those arguments from both motions together.

A.      Shotgun Pleading

City Defendants argue the Court should dismiss the SAC as an impermissible shotgun pleading, as it did in its previous Order.  (ECF No. 69 at 13.)

Rule 8 requires "each averment of a pleading to be simple, concise, and direct."  *McHenry v. Renne*, 84 F.3d 1172, 1177–78 (9th Cir. 1996) (internal quotation marks omitted).  To comply with Rule 8, a complaint should clearly and fully set forth "who is being sued, for what relief, and on what theory, with enough detail to guide discovery."  *Id.* at 1178.  Shotgun pleading occurs when: (1) one party pleads that multiple parties did an act, without identifying which party did what specifically; or (2) when one party pleads multiple claims and does not identify which specific facts are allocated to which claim.  *Hughey v. Camacho*, No. 2:13-cv-02665-TLN-AC, 2014 WL 5473184, at *4 (E.D. Cal. Oct. 23, 2014).

In its previous Order, the Court dismissed the First Amended Complaint ("FAC") as a shotgun pleading because Plaintiff addressed Defendants collectively in nearly all the allegations and claims.  (ECF No. 60.)  In contrast, the much-improved SAC adds considerable factual detail, delineates the "wrongful acts" of each Defendant, and specifies what facts give rise to each claim.  (ECF No. 65.)  Although the SAC could be clearer at times, it is no longer a shotgun pleading.  The Court thus DENIES City Defendants' motions to dismiss pursuant to Rule 8.

B.      Timeliness of Claims Against Fladager, Harris, and Ferreira Based on
Conduct Prior to October 11, 2016

County Defendants argue that claims against Fladager, Harris, and Ferreira based on conduct that occurred prior to October 11, 2016, are barred by California's two-year statute of limitations for personal injury actions.  (ECF No. 68-1 at 11.)  County Defendants also contend tolling under California Government Code § 945.3 does not apply to Fladager, Harris, and Ferreira because they are district attorneys, not peace officers.[2]  (*Id.*)  In opposition, Plaintiff

---

[2]      Federal courts apply the forum state's laws with respect to tolling of the statute of limitations insofar as state law is not inconsistent with federal law.  *Butler v. Nat'l Cmty. Renaissance of Cal.*, 766 F.3d 1191, 1198 (9th Cir. 2014).  California law statutorily tolls "[a]ny applicable statute of limitations for filing and prosecuting" an action for "damages against a peace officer . . . based upon conduct of the peace officer relating to the offense for which the accused is charged, including an act or omission in investigating or reporting the offense or arresting or

5

1    argues his claims based on the 2015 arrest warrant did not accrue until the charges against him

2    were dismissed on October 24, 2017.  (ECF No. 74 at 17.)  Plaintiff does not address County

3    Defendants' arguments as to tolling under § 945.3.  (*See id.*)  In reply, County Defendants argue

4    Plaintiff's judicial deception claim accrued when the underlying affidavit was reasonably

5    available — in this case, August 2015.  (ECF No. 78 at 2.)

6            County Defendants have not persuaded the Court that all of Plaintiff's claims based on

7    conduct prior to October 11, 2016 are necessarily time-barred.  County Defendants offer only

8    conclusory arguments on this issue in their motion.  (ECF No. 68-1 at 11–12.)  For example,

9    County Defendants summarily argue that Plaintiff's judicial deception claim, claims that County

10   Defendants supervised or participated in the investigation, and Plaintiff's state law claims are

11   time-barred.  (*Id.*)  County Defendants do not cite case law as to accrual dates for each specific

12   claim in their motion.  (*See id.*)  In fact, the only case County Defendants cite in their reply is

13   *Klein v. City of Beverly Hills*, 856 F.3d 1276 (9th Cir. 2017), which supports the possibility that

14   Plaintiff's judicial deception claim is timely depending on when the underlying affidavit was

15   reasonably available.  (ECF No. 78 at 2.)  On the other hand, Plaintiff's briefing on this issue is

16   equally weak.  For instance, Plaintiff does not cite factual allegations or make clear arguments

17   about when each claim based on Fladager, Harris, and Ferreira's conduct accrued.  (*See* ECF No.

18   74 at 17.)  Absent clear factual allegations from Plaintiff about when each claim accrued and/or

19   any basis for tolling, the Court cannot say that Plaintiff alleges timely claims.

20           For these reasons, the Court GRANTS County Defendants' motion with leave to amend as

21   to claims against Fladager, Harris, and Ferreira based on conduct prior to October 11, 2016.

22                   C.      Timeliness of Claims Against Harris

23           County Defendants argue claims against Harris are time-barred because Plaintiff did not

24   name Harris in this action or identify him in the complaint until the FAC was filed in June 2020

25   despite knowing of his existence for over three years.  (ECF No. 68-1 at 12.)  In opposition,

26   Plaintiff argues the addition of Harris in place of a *Doe Defendant* relates back to the original

27

28   detaining the accused."  Cal. Gov't Code § 945.3.

                                              6

1    complaint, which was timely filed.  (ECF No. 74 at 17.)

2          When a limitations period derives from state law, Rule 15(c)(1) requires district courts "to

3    consider both federal and state law and employ whichever affords the more permissive relation

4    back standard."  *Butler*, 766 F.3d at 1200–01 ("[A] plaintiff may be entitled to the benefit of state

5    law relation back rules if those are more generous than Rule 15(c).").  Because the Court

6    concludes relation back is appropriate under the federal rule, the Court need not and does not

7    address the California rule.  For an amended complaint to relate back under Rule 15(c)(1)(C), "(1)

8    the basic claim must have arisen out of the conduct set forth in the original pleading; (2) the party

9    to be brought in must have received such notice that it will not be prejudiced in maintaining its

10   defense; (3) that party must or should have known that, but for a mistake concerning identity, the

11   action would have been brought against it."  *Id.* at 1202 (quoting *Schiavone v. Fortune*, 477 U.S.

12   21, 29 (1986)).

13         County Defendants only contest the third requirement (*see* ECF No. 68-1 at 13), that

14   Harris "knew or should have known that the action would have been brought against [him], *but*

15   *for a mistake concerning the proper party's identity*."  Fed. R. Civ. P. 15(c)(1)(C)(ii) (emphasis

16   added).  As to this requirement, the Supreme Court has clarified the "relation back under Rule

17   15(c)(1)(C) depends on what the party to be added knew or should have known, not on the

18   amending party's knowledge or its timeliness in seeking to amend the pleading."  *Krupski v.*

19   *Costa Crociere S. p. A.*, 560 U.S. 538, 541 (2010).

20         Plaintiff argues when he discovered Harris's role in the investigation, he substituted Harris

21   for the Doe Defendants in the FAC.  (ECF No. 74 at 18.)  Plaintiff further argues by virtue of

22   Harris's position at the County there is sufficient "community of interest" such that he had notice

23   of the action and Harris has shared an attorney with the other Defendants since the filing of the

24   original complaint.  (*Id.* at 19.)  The Court agrees with Plaintiff that this is sufficient to show

25   Harris knew or should have known the action would have been brought against him, but for

26   Plaintiff's mistake.  *See* Fed. R. Civ. P. 15(c)(1)(C)(ii); *Krupski*, 560 U.S. at 549 ("[A] plaintiff

27   might know that the prospective defendant exists but nonetheless harbor a misunderstanding

28   about his status or role in the events giving rise to the claim at issue, and she may mistakenly

1   choose to sue a different defendant based on that misimpression.  That kind of deliberate but

2   mistaken choice does not foreclose a finding that Rule 15(c)(1)(C)(ii) has been satisfied.").

3          Accordingly, the Court DENIES County Defendants' motion to dismiss based on the

4   timeliness of adding Harris as a Defendant.

5                  D.     Timeliness of Plaintiff's Third and Fifth Claims

6          County Defendants argue Plaintiff's retaliatory prosecution and *Monell* claims are time-

7   barred because they were not asserted until June 2020.  (ECF No. 68-1 at 14.)  In opposition,

8   Plaintiff argues these claims relate back to facts in the original Complaint, which was filed on

9   October 11, 2018.  (ECF No. 74 at 19.)

10         "An otherwise time-barred claim in an amended pleading is deemed timely if it relates

11  back to the date of a timely original pleading."  *Asarco, LLC v. Union Pac. R.R. Co.*, 765 F.3d

12  999, 1004 (9th Cir. 2014).  Under Rule 15(c), an amended complaint relates back when it asserts

13  a claim "that arose out of the conduct, transaction, or occurrence set out — or attempted to be set

14  out — in the original pleading."  Fed. R. Civ. P. 15(c)(1)(B).

15         Plaintiff argues the facts and circumstances alleged in the SAC are the same as the

16  original Complaint — namely, the malicious investigation and retaliatory prosecution of Plaintiff

17  as part of the conspiracy to frame Carson for murder.  (ECF No. 74 at 19–20.)  The Court has

18  reviewed the original Complaint and agrees with Plaintiff.  In the Complaint, Plaintiff alleges he

19  was arrested and prosecuted despite a "total lack of evidence to support the charges" against him

20  as part of a conspiracy by County Defendants based on their disdain for Carson.  (ECF No. 1 at 2,

21  7, 18.)  Plaintiff's allegations in the SAC are more detailed but essentially arise from the same

22  conduct alleged in the Complaint.  As such, the Court concludes the relation back doctrine applies

23  because Claims Three and Five stem from the same conduct set out (or attempted to be set out) in

24  the original Complaint.  Fed. R. Civ. P. 15(c)(1)(B).

25         Thus, the Court DENIES County Defendants' motion to dismiss based on the timeliness

26  of Claims Three and Five.

27  ///

28  ///

8

1          E.      Timeliness of Plaintiff's Claims Against Fladager, Harris, and Ferreira as

2                  Administrators, Supervisors, or Investigators

3          County Defendants argue Plaintiff's claims against Fladager, Harris, and Ferreira as

4   administrators, supervisors, or investigators are time-barred because those claims are raised for

5   the first time in the SAC.  (ECF No. 68-1 at 16.)  In opposition, Plaintiff argues this theory of

6   liability is based on the same facts pleaded in the original Complaint.  (ECF No. 74 at 20.)

7          The Court agrees with Plaintiff and concludes the relation back doctrine applies because

8   these claims against Fladager, Harris, and Ferreira arise from the same conduct alleged in the

9   original Complaint.  For example, the Complaint alleges "Ferreira acted outside her role as a

10  prosecuting attorney by acting as an investigator."  (ECF No. 1 at 7.)  The Complaint also alleges

11  that Fladager and Ferreira failed to provide adequate training and supervision of attorneys,

12  investigators, and deputies and failed to adequately discipline or retrain employees involved in

13  misconduct.  (*Id.* at 3.)  Although Plaintiff did not allege his original claims as clearly, the Court

14  is persuaded that the claims in the SAC arise from the same conduct set out — or attempted to be

15  set out — in Complaint.  Fed. R. Civ. P. 15(c)(1)(B).

16         As such, the Court DENIES County Defendants' motion to dismiss based on the

17  timeliness of claims against Fladager, Harris, and Ferreira as administrators, supervisors, or

18  investigators.

19                 F.      Official Capacity Suits

20         County Defendants argue Plaintiff's claims against Fladager, Harris, Ferreira, Bunch,

21  Jacobson, and Brown in their official capacities should be dismissed as duplicative of claims

22  against the County.  (ECF No. 68-1 at 16.)  Plaintiff does not respond to this argument.

23         The Court agrees with County Defendants that suits against individuals in their official

24  capacity are redundant to claims against the County.  It is appropriate to dismiss official capacity

25  suits as redundant when the municipality is also named as a defendant to the same claims arising

26  out of the same facts.  *Maldonado v. City of Ripon*, No. 2:17-cv-00478-TLN-GGH, 2018 WL

27  5304820, at *5 (E.D. Cal. Oct. 24, 2018) (collecting cases).

28         Therefore, the Court GRANTS County Defendants' motion on this basis and DISMISSES

1    the official capacity claims against individual County Defendants without leave to amend.

2                    G.      Claims Against Fladager, Harris, and Ferreira as Prosecutors

3            County Defendants argue claims against Fladager, Harris, and Ferreira in their roles as

4    prosecutors should be dismissed because they have Eleventh Amendment immunity and absolute

5    immunity.  (ECF No. 68-1 at 16–18.)  In opposition, Plaintiff argues there is no Eleventh

6    Amendment immunity or absolute immunity for prosecutors acting as policymakers, supervisors,

7    or investigators.  (ECF No. 74 at 21.)  The Court will address each type of immunity in turn.

8            First, as to Eleventh Amendment immunity, the parties agree that state sovereign

9    immunity does not preclude claims against Fladager, Harris, and Ferreira based on conduct that is

10   administrative in nature rather than prosecutorial.  *Compare Goldstein v. City of Long Beach*, 715

11   F.3d 750, 759–60 (9th Cir. 2013)) ("[The] District Attorney represents the county when

12   establishing administrative policies and training related to the general operation of the district

13   attorney's office."), *with Weiner v. San Diego Cnty.*, 210 F.3d 1025, 1031 (9th Cir. 2000) ("[A]

14   California district attorney is a state officer when deciding whether to prosecute an individual.").

15           Plaintiff argues his claims against Fladager, Harris, and Ferreira do not stem from their

16   roles as prosecutors, but from their roles in setting local administrative policy and failing to

17   properly train or discipline investigators.  (ECF No. 74 at 21.)  In the SAC, Plaintiff alleges

18   Fladager, and Harris were policymakers who ratified and supervised their employees' use of

19   fabricated evidence.  (ECF No. 65 at ¶¶ 95–96.)  Plaintiff further alleges Ferreira acted outside

20   her role as prosecutor by trying to intimidate a witness from participating in the preliminary

21   hearing, participating in witness interviews, and fabricating evidence.  (*Id.* at ¶ 48.)  To the extent

22   Plaintiff's claims do not challenge Fladager, Harris, and Ferreira's conduct as prosecutors,

23   Eleventh Amendment immunity does not preclude such claims.

24           Second, as to absolute immunity, prosecutors are not entitled to absolute immunity for

25   claims related to administrative and investigatory conduct.  Absolute prosecutorial immunity

26   applies only to conduct "intimately associated with the judicial phase of the criminal process."

27   *Burns v. Reed*, 500 U.S. 478, 486 (1991) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430

28   (1976)).  In contrast, prosecutors "enjoy only qualified immunity, not absolute immunity, for

1    investigatory, administrative, or investigative functions." *Santana v. Cnty. of Yuba*, No. 2:15-cv-

2    00794-KJM-EFB, 2016 WL 1268107, at *14 (E.D. Cal. Mar. 31, 2016).

3         In the instant case, Plaintiff asserts his claims against Fladager, Harris, and Ferreira are

4    based on allegations about how they acted outside their roles as prosecutors.  (ECF No. 74 at 23.)

5    To the extent Plaintiff's claims hinge on administrative and investigative misconduct and not

6    prosecutorial conduct "intimately associated with the judicial phase of the criminal process,"

7    absolute immunity does not apply.  *Burns*, 500 U.S. at 48.

8         For these reasons, the Court DENIES County Defendants' motion to dismiss based on

9    Fladager, Harris, and Ferreira's immunity.

10                      H.      Unlawful Search and Seizure Based on Judicial Deception

11        County Defendants argue Plaintiff fails to allege his judicial deception claim.  (ECF No.

12   68-1 at 18.)  In opposition, Plaintiff contends he stated a claim based on detailed allegations about

13   material omissions and false statements in the arrest warrant.  (ECF No. 74 at 24.)

14        "[G]overnment investigators may be liable for violating the Fourth Amendment when they

15   submit false and material information in a warrant affidavit."  *Galbraith v. Cnty. of Santa Clara*,

16   307 F.3d 1119, 1126 (9th Cir. 2002).  Under this authority, "a § 1983 plaintiff must show that the

17   investigator 'made deliberately false statements or recklessly disregarded the truth in the

18   affidavit' and that the falsifications were 'material' to the finding of probable cause."  *Id.* (quoting

19   *Hervey v. Estes*, 65 F.3d 784, 790 (9th Cir. 1995)).  It is true that "a plaintiff cannot hold an

20   officer liable because of his membership in a group without a showing of individual participation

21   in the unlawful conduct."  *Jones v. Williams*, 297 F.3d 930, 935 (9th Cir. 2002) (citing *Chuman v.*

22   *Wright*, 76 F.3d 292, 294 (9th Cir. 1996)).  However, "district courts construing the group

23   liability doctrine of *Jones* and *Chuman* have upheld [§] 1983 claims against groups of defendants

24   where the pleadings also include factual allegations sufficient to establish that individual

25   defendants were integral participants in the unlawful conduct."  *Martinez v. City of W.*

26   *Sacramento*, No. 2:16-cv-02566-TLN-EFB, 2019 WL 448282, at *16 (E.D. Cal. Feb. 5, 2019).

27        Although Plaintiff's allegations could be clearer, the Court agrees with Plaintiff that the

28   allegations in the SAC support at the very least a reasonable inference that the individual

                                        11

1    Defendants "made deliberately false statements or recklessly disregarded the truth in the affidavit

2    and that the falsifications were material to the finding of probable cause." *Galbraith*, 307 F.3d at

3    1126.  The SAC alleges approximately 15 specific material omissions and false or misleading

4    statements in the arrest warrant that led to Plaintiff's arrest.  (ECF No. 65 at ¶ 42.)  Further,

5    Plaintiff alleges facts specific to each Defendant sufficient to infer that each were integral

6    participants in the allegedly unlawful arrest.  (*Id.* at ¶¶ 46–52.)  For example, the SAC alleges

7    Brown, the affiant, testified that the arrest warrant resulted from a "group consensus" between

8    himself, Fladager, Ferreira, Bunch, Evers, and Jacobson as to what charges to seek and what facts

9    to include in the warrant.  (*Id.* at ¶ 40.)  The SAC further alleges Defendants reviewed the arrest

10   warrant, knew it contained fabrications and omissions of exculpatory evidence, and nonetheless

11   ordered Brown to submit the warrant to a judge as part of a conspiracy to frame Carson for

12   murder.  (*Id.*)  The Court concludes these allegations are sufficient to state a claim.

13        Thus, the Court DENIES County Defendants' motion to dismiss the judicial deception

14   claim.[3]

15             I.       Malicious Prosecution

16        City Defendants argue there are no specific allegations tying Evers to the investigation

17   and prosecution of Plaintiff.  (ECF No. 69 at 13.)  In opposition, Plaintiff argues he sufficiently

18   alleged facts showing Evers was an integral participant in the entire malicious investigation.

19   (ECF No. 75 at 16.)

20        To establish a cause of action for malicious prosecution, a plaintiff must demonstrate the

21   prior action was: (1) initiated by or at the direction of the defendant and legally terminated in the

22   plaintiff's favor; (2) brought without probable cause; and (3) initiated with malice.  *Siebel v.*

23   *Mittlesteadt*, 41 Cal. 4th 735, 740 (2007).  A plaintiff must also show the defendant prosecuted

24   him "for the purpose of denying [him] equal protection or another specific constitutional right."

25   *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004).

26   ///

27

28   [3]       Plaintiff agrees to voluntarily dismiss any claims based on search warrants.  (ECF No. 74
     at 24.)  Therefore, any such claims are DISMISSED without leave to amend.

With respect to the first element, Plaintiff points to several allegations in the SAC regarding Evers's role in the investigation that led to Plaintiff's criminal prosecution. (ECF No. 65 at ¶ 51.)  For example, Plaintiff alleges Evers participated in approximately 400 interviews in the investigation and was one of the primary persons involved in creating the fabricated statement of Robert Woody ("Woody") and in creating false statements to bolster Woody's statement.  (*Id.*) Plaintiff alleges Woody's false and coerced statement was the only evidence linking Carson — and Plaintiff by extension — to the murder of Kauffman.  (*Id.* at ¶ 40.)  Plaintiff also alleges Evers participated in drafting the arrest warrant with fabricated/omitted material evidence that led to Plaintiff's arrest.  (*Id.*)  Plaintiff alleges the criminal action terminated in his favor after the charges were dismissed for lack of probable cause.  (*Id.* at ¶ 44.)  With respect to the second and third elements, Plaintiff alleges facts suggesting Defendants' actions were not supported by probable cause and were motivated by a malicious desire to convict Carson.  (*Id.* at ¶¶ 39–40.) Lastly, Plaintiff asserts Defendants acted to deny Plaintiffs' Fourth Amendment rights.  (*Id.* at ¶ 74.)  While Plaintiff's allegations could have been clearer, the Court concludes these allegations provide at the very least a reasonable inference that Evers was an integral participant in the group conduct and are sufficient to state a claim for malicious prosecution.  *Martinez*, 2019 WL 448282, at *16; *see Usher v. City of L.A.*, 828 F.2d 556, 562 (9th Cir. 1987) (concluding the plaintiff adequately stated a malicious prosecution claim based on allegations that "the defendants illegally arrested him, contrived charges to justify the arrest, submitted false police reports, and initiated his criminal prosecution in bad faith").

As such, the Court DENIES City Defendants' motion to dismiss Plaintiff's malicious prosecution claims.

### J.   Retaliatory Prosecution

County Defendants argue Plaintiff lacks standing to bring a First Amendment retaliatory prosecution claim and alternatively fail to state such a claim.  (ECF No. 68-1 at 20.)  County Defendants add that there is no Fourth Amendment right to be free from retaliatory prosecution. (*Id.* at 21.)  City Defendants also argue Plaintiff fails to state a claim for retaliatory prosecution because there are no allegations that Evers personally participated in the alleged constitutional

1  violations.  (ECF No. 69 at 14.)  In opposition, Plaintiff argues he has standing to bring a First

2  Amendment claims based on his own criticism of law enforcement as well as his perceived

3  association with Carson and the Athwals.  (ECF No. 74 at 27.)

4       At the outset, the Court agrees with Defendants that there is no Fourth Amendment right

5  to be free from retaliatory prosecution.  *See Adams v. Kraft*, No. 10-CV-00602-LHK, 2011 WL

6  846065, at *7 (N.D. Cal. Mar. 8, 2011) (dismissing Fourth Amendment retaliatory prosecution

7  claim based on a lack of authority that such a cause of action exists).  Plaintiff fails to provide

8  authority to convince the Court otherwise.  Therefore, to the extent Plaintiff's retaliatory

9  prosecution claim is premised on the Fourth Amendment, that claim is DISMISSED without

10  leave to amend.

11       Turning to retaliatory prosecution claim under the First Amendment, such claims require

12  "that (1) [Plaintiffs were] engaged in a constitutionally protected activity, (2) the [Defendants']

13  actions would chill a person of ordinary firmness from continuing to engage in the protected

14  activity and (3) the protected activity was a substantial or motivating factor in [Defendants']

15  conduct."  *Capp v. Cnty. of San Diego*, 940 F.3d 1046, 1053 (9th Cir. 2019) (quotation marks and

16  citation omitted).  To prevail on such a claim, a plaintiff must establish that the defendant's

17  retaliatory animus was the "but-for" cause of the plaintiff's injury, "meaning that the adverse

18  action against the plaintiff would not have been taken absent the retaliatory motive."  *Nieves v.*

19  *Bartlett*, 139 S. Ct. 1715, 1725 (2019).

20       County Defendants take issue with the fact that Plaintiff does not allege he was personally

21  engaged in protected speech.  (ECF No. 68-1 at 20.)  The Court agrees.  In the retaliatory

22  prosecution cause of action, Plaintiff only mentions retaliation "for the constitutionally protected

23  activities of Carson as a lawyer and public advocate against corruption of law enforcement."

24  (ECF No. 65 at ¶¶ 80-81.)  There are no factual allegations about Plaintiff's own protected

25  speech.  (*See id.* at ¶¶ 78–85.)  Moreover, Plaintiff does not clearly allege that Carson's actions

26  warrant First Amendment protection, nor does he allege how such protection would extend to

27  Plaintiff.  Lastly, Plaintiff does not mention the Athwals in this claim.  Because Plaintiff fails to

28  allege the first element of his First Amendment retaliatory prosecution claim, the Court

1   DISMISSES that claim with leave to amend and declines to address Defendants' remaining

2   arguments as to this claim.  *Capp*, 940 F.3d at 1053.

3          Accordingly, the Court GRANTS Defendants' motions to dismiss the retaliatory

4   prosecution claim, with leave to amend as to the First Amendment claim only.

5                  K.      Fourteenth Amendment

6          County Defendants argue Plaintiff fails to state a substantive due process claim under the

7   Fourteenth Amendment.  (ECF No. 68-1 at 21.)  In opposition, Plaintiff argues he adequately

8   alleges his Fourteenth Amendment claim based on Defendants' deliberate fabrication of evidence

9   and withholding of exculpatory evidence.  (ECF No. 74 at 29–30.)

10         As a preliminary matter, Plaintiff does not allege deliberate fabrication of evidence as a

11  basis for his Fourteenth Amendment claim.  (ECF No. 65 at 49–50); *see McDonough v. Smith*,

12  139 S. Ct. 2149, 2156 (2019) (setting forth the elements of a deliberate fabrication claim); *see*

13  *also Caldwell v. City & Cnty. of San Francisco*, 889 F.3d 1105, 1112 (9th Cir. 2018) (same).

14  Rather, the factual allegations under the Fourteenth Amendment claim relate solely to the

15  withholding of exculpatory evidence.  (ECF No. 65 at 49–50.)  As such, the Court declines to

16  consider Plaintiff's arguments about deliberate fabrication.  To the extent Plaintiff intended to

17  allege deliberate fabrication as a basis for his Fourteenth Amendment claim, the Court will give

18  him the opportunity to clearly allege that theory in an amended complaint.

19         As it is, Plaintiff alleges "Ferreira turned over 53 discs of previously undisclosed

20  investigative materials" in 2016, more than one year after Plaintiff's arrest and ten months into

21  the preliminary hearing.  (ECF No. 65 at 50.)  Plaintiff alleges that this evidence included (1) a

22  polygraph showing that a key witness was being truthful when he denied being involved in the

23  Kauffman murder and (2) deleted footage showing drug dealers at the location where Kauffman's

24  remains were found before information about the location was known to the public.  (*Id.*)

25  Plaintiff alleges Fladager, Harris, and Ferreira acted as supervisors and investigators when the

26  exculpatory evidence was withheld.  (*Id.*)

27         The Ninth Circuit has recognized that where "investigating officers, acting with deliberate

28  indifference or reckless disregard for a suspect's right to freedom from unjustified loss of liberty,

                                                    15

fail to disclose potentially dispositive exculpatory evidence to the prosecutors, leading to the lengthy detention of an innocent man, they violate the due process guarantees of the Fourteenth Amendment." *Tatum v. Moody*, 768 F.3d 806, 816 (9th Cir. 2014). However, the Ninth Circuit "emphasize[d] the narrowness of the constitutional rule . . ., which is restricted to detentions of (1) unusual length, (2) caused by the investigating officers' failure to disclose highly significant exculpatory evidence to prosecutors, and (3) due to conduct that is culpable in that the officers understood the risks to the plaintiff's rights from withholding the information or were completely indifferent to those risks." *Id.* at 819–20.

In the instant case, County Defendants correctly point out that Plaintiffs do not cite allegations to show Jacobson or Brown's personal participation in withholding exculpatory evidence, which warrants dismissal of this claim against those individuals. The Court is also not convinced that Plaintiffs have adequately alleged they were detained for an "unusual length" of time. In *Tatum*, the defendant was subject to pretrial detention for over two years because police withheld highly material evidence from prosecutors during that time. 768 F.3d at 809. In contrast, Plaintiff cites no allegations regarding the length of his detention.

Accordingly, the Court GRANTS County Defendants' motion to dismiss Plaintiff's Fourteenth Amendment claim with leave to amend.

### L.     *Monell*

County Defendants argue Plaintiff fails to state a *Monell* claim. (ECF No. 68-1 at 24.) In opposition, Plaintiff argues he adequately alleged a *Monell* claim based primarily on allegations about Fladager and Harris's ratification of the alleged misconduct. (ECF No. 74 at 31.)

It is well-established that municipalities cannot be held liable under § 1983 for unconstitutional torts of their employees based solely on respondeat superior. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 693–94 (1978). Pursuant to *Monell*, a municipality is only liable under § 1983 when its own illegal acts are a "moving force" in the constitutional violation. *Id.* A plaintiff may assert *Monell* liability on one of three grounds: (1) a longstanding practice or custom, which constitutes the "standard operating procedure" of the local government entity; (2) omissions or failures to act that amount to a local government policy of deliberate

1  indifference to constitutional rights; or (3) a local government official with final policy-making

2  authority ratifies a subordinate's unconstitutional conduct.  *Clouthier v. Cnty. of Contra Costa*,

3  591 F.3d 1232, 1249–50 (9th Cir. 2010), *overruled on other grounds by Castro v. Cnty. of L.A.*,

4  833 F.3d 1060, 1070 (9th Cir. 2016).

5       Because Plaintiff failed to allege underlying First or Fourteenth Amendment claims,

6  Plaintiff's *Monell* claims as to those violations are DISMISSED with leave to amend.  *See*

7  *Pastora v. Cnty. of San Bernardino*, No. EDCV211410JGBSPX, 2022 WL 2965778, at *5 (C.D.

8  Cal. May 19, 2022) ("[A] *Monell* claim cannot survive without an underlying constitutional

9  violation.").  As to the underlying Fourth Amendment claims based on judicial deception and

10  malicious prosecution, Plaintiff alleges that Fladager and Harris were final policymakers for the

11  County.  (ECF No. 65 at ¶ 95.)  Plaintiffs also allege that Fladager and Harris ratified, supervised,

12  and condoned unconstitutional policies and decision-making, including the coercion of criminal

13  defendants to give false statements against Carson and submission of deceptive warrants.  (*Id.* at

14  ¶¶ 46–48.)

15       Taking these allegations in the light most favorable to Plaintiff and drawing all reasonable

16  inferences in his favor, the Court concludes Plaintiff sufficiently alleges the County, through final

17  decision and policymakers, knew of and approved the alleged constitutional violations.  *See*

18  *Anglero-Wyrick v. Cnty. of Sonoma*, No. 21-CV-01985-SK, 2021 WL 4170677, at *3 (N.D. Cal.

19  Sept. 14, 2021) ("Whether these allegations support a *Monell* claim for ratification or simply

20  further support a claim that the County had a pre-existing policy which caused the constitutional

21  violations, Plaintiff has sufficiently alleged a *Monell* claim.").

22       Accordingly, County Defendants' motion to dismiss is GRANTED with leave to amend

23  as to the *Monell* claims based on violations of the First and Fourteenth Amendment and DENIED

24  as to the *Monell* claims based on violations of the Fourth Amendment.

25                 M.       California Civil Code § 52.1

26       County Defendants argue Plaintiff fails to state a claim under California Civil Code § 52.1

27  (the "Bane Act") because he does not allege Defendants had a "specific intent" to violate

28  Plaintiff's constitutional rights.  (ECF No. 68-1 at 26.)  County Defendants further argue Plaintiff

1  fails to state any factual allegations against Brown.  (*Id.* at 27.)  Lastly, County Defendants argue

2  Fladager, Harris, and Ferreira are immune from liability under California Government Code §

3  820.8.[4]  (*Id.*)  City Defendants argue Plaintiff cannot state Bane Act claims because he has not

4  alleged viable § 1983 claims against Evers.  (ECF No. 69 at 18.)  In opposition to County

5  Defendants' motion, Plaintiff argues Defendants' specific intent is evidenced by their continued

6  investigation of Plaintiff despite the lack of any evidence against him.  (ECF No. 74 at 32 (citing

7  ECF No. 65 at ¶ 45–48).)  In opposition to City Defendants' motion, Plaintiff argues he has

8  sufficiently alleged that Evers participated in the constitutional violations.  (ECF No. 75 at 23.)

9       The Bane Act provides a private cause of action against anyone who "interferes by threats,

10  intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the

11  exercise or enjoyment by an individual or individuals of rights secured by the Constitution or

12  laws of the United States, or laws and rights secured by the Constitution or laws of California."

13  Cal. Civil Code § 52.1(a).  "[T]he Bane Act does not require the 'threat, intimidation or coercion'

14  element of the claim to be transactionally independent from the constitutional violation alleged."

15  *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018).  However, the Bane Act

16  requires Plaintiffs to show that Defendants had a specific intent to violate their constitutional

17  rights.  *Id.*  "[A] reckless disregard for a person's constitutional rights is evidence of a specific

18  intent to deprive that person of those rights."  *Id.* at 1045.

19       The Court agrees with Defendants that Plaintiff's Bane Act claim is insufficient.  In the

20  Bane Act claim, the SAC alleges "Bunch, Jacobson, and Evers used threats and coercive

21  interview tactics to secure false statements from witnesses with the intent to deprive *Carson* of his

22  constitutional rights."  (ECF No. 65 at ¶ 101 (emphasis added).)  The SAC then alleges in a

23  conclusory fashion that "Plaintiff was subjected to threats, intimidation and coercion."  (*Id.* at ¶

24  102.)  Neither the SAC nor Plaintiff's opposition clearly point to factual allegations suggesting

---

26  [4]      Because the Court concludes Plaintiff fails to allege a Bane Act claim, the Court need not

27  and does not address whether § 820.8 applies.  The Court notes, however, that while § 820.8 limits vicarious liability, it is inapplicable if a plaintiff alleges facts showing a supervisory

28  defendant's culpable action or inaction proximately caused the injury.  *Rodriguez v. Cnty. of Los Angeles*, 891 F.3d 776, 799 (9th Cir. 2018).

individual Defendants acted with the specific intent to interfere with *Plaintiff's* rights as to each purported constitutional violation, or that they did so by "threats, intimidation, or coercion." *Reese*, 888 F.3d 1030 at 1040.

As such, the Court GRANTS Defendants' motions to dismiss Plaintiff's Bane Act claim with leave to amend.

### N.      California Civil Code § 47

County Defendants argue the Court should dismiss Plaintiff's defamation claim based on California Civil Code § 47.  (ECF No. 68-1 at 28.)  Plaintiff opposes.  (ECF No. 74 at 33.)

Section 47 states in relevant part, "[a] privileged publication or broadcast is one made: (a) In the proper discharge of an official duty; [or] (b) In any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law."

County Defendants argue Plaintiff's defamation claim is based on statements made at a press conference announcing Plaintiff's arrest.  (ECF No. 68-1 at 27.)  County Defendants argue the litigation privilege set forth in § 47 applies because these statements were made in the discharge of the district attorneys' official duties and were made as part of the criminal prosecution.  (*Id.* at 27–28.)  Plaintiff does not refute these points and instead argues that § 47 does not apply to malicious prosecution claims and statements to the press are not privileged because the press is not a participant to the proceedings.  (ECF No. 74 at 33.)

The briefing on this issue is subpar on both sides.  However, to the extent that Plaintiff's allegations are based on statements subject to § 47, Plaintiff's only viable claim is one for malicious prosecution.  *Flores v. Emerich & Fike*, 416 F. Supp. 2d 885, 902 (E.D. Cal. 2006) (dismissing a defamation claim and stating "[t]he litigation privilege does not apply to claims of malicious prosecution [which are] . . . perhaps the only exception to the absolute nature of the litigation privilege"); *Oei v. N. Star Cap. Acquisitions, LLC*, 486 F. Supp. 2d 1089, 1102 (C.D. Cal. 2006) ("[O]nly claims that incorporate all elements of a malicious prosecution claim are exempt from operation of the litigation privilege.") (citing *Hagberg v. Cal. Federal Bank FSB*, 32 Cal. 4th 350, 375 (2004)).  The Court also notes that Plaintiff fails to adequately explain why the

1   litigation privilege does not extend to statements to the press when the parties invoking the

2   litigation privilege in this case are the district attorneys.  For their part, County Defendants cite

3   various cases where courts found the litigation privilege applied to district attorney's statements

4   at press conferences and in press releases.  (ECF No. 68-1 at 28.)

5           For these reasons, the Court GRANTS County Defendants' motion to dismiss Plaintiff's

6   defamation claim.  Although the Court is doubtful as to Plaintiff's ability to allege a proper

7   defamation claim due to § 47, the Court will give Plaintiff an opportunity to amend.

8                           O.     Qualified Immunity

9           City Defendants argue Evers is entitled to qualified immunity.  (ECF No. 69 at 18.)  In

10   opposition, Plaintiff argues Evers violated clearly established law because he knew or should

11   have known there was no probable cause to arrest or prosecute Plaintiff.  (ECF No. 75 at 23.)

12          In § 1983 actions, qualified immunity "protects government officials from civil liability

13   where 'their conduct does not violate clearly established statutory or constitutional rights of

14   which a reasonable person would have known.'"  *Cunningham v. Kramer*, 178 F. Supp. 3d 999,

15   1003 (E.D. Cal. 2016) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).  The doctrine

16   "gives government officials breathing room to make reasonable but mistaken judgments" and

17   "protects 'all but the plainly incompetent or those who knowingly violate the law.'"  *Ashcroft v.*

18   *al-Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

19          In the instant case, the Court cannot conclude that qualified immunity is appropriate at this

20   stage.  Dismissal under Rule 12(b)(6) "is not appropriate unless [the court] can determine, based

21   on the complaint itself, that qualified immunity applies."  *Id.*; *see also Jensen v. City of Oxnard*,

22   145 F.3d 1078, 1085 (9th Cir. 1998).  Plaintiff's claims involve a complex array of factual

23   allegations that, if true, may preclude City Defendants from qualified immunity.  The Court

24   concludes a determination of whether qualified immunity applies in this case should be made

25   after further development of the factual record, such as on a motion for summary judgment.

26          Therefore, the Court DENIES City Defendants' motion to dismiss based on qualified

27   immunity.

28   ///

P.      False Arrest/Imprisonment

City Defendants argue Plaintiff fails to allege that Evers had anything to do with Plaintiff's arrest and, alternatively, Evers is immune from liability.  (ECF No. 69 at 18.)  In opposition, Plaintiff argues he states a viable claim and Evers is not immune from liability.  (ECF No. 75 at 23.)

A false imprisonment claim in an arrest context arises upon "(1) the nonconsensual, intentional confinement of a person, (2) without lawful privilege, and (3) for an appreciable period of time, however brief."  *Easton v. Sutter Coast Hosp.*, 80 Cal. App. 4th 485, 496 (2000). An officer acts "without lawful privilege" either when he arrests without probable cause, or when he maliciously arrests another by personally serving an arrest warrant issued solely on deliberately falsified information.  *Blaxland v. Commonwealth Dir. of Pub. Prosecutions*, 323 F.3d 1198, 1205 n.4 (9th Cir. 2003).

As mentioned, Plaintiff alleges Evers was part of the group that chose what charges to seek and facts to include in the arrest warrant affidavit.  Plaintiff further alleges Evers spoke with Brown about the arrest warrant, knew it contained false and misleading statements and omissions, and did nothing to correct it.  In addition, Plaintiff alleges Evers used various abusive and improper interviewing techniques to coerce a false confession from Woody and failed to disclose material information from the interview on the arrest warrant affidavit.  These allegations are sufficient to provide at the very least a reasonable inference that Evers was an integral participant in arresting Plaintiff without probable cause and/or based on an arrest warrant issued based on deliberately falsified information.  *See Blaxland*, 323 F.3d at 1205 n.4; *see also Harden v. S.F. Bay Area Rapid Transit Dist.*, 215 Cal. App. 3d 7, 15–16 (1989) ("All who take part in or assist in the commission of a false imprisonment are joint tortfeasors and may be joined as defendants without an allegation or proof of a conspiracy.").  As to City Defendants' immunity argument, the allegations already discussed at length support a reasonable inference that Evers acted with malice, which would preclude immunity.  *See Harden*, 215 Cal. App. 3d at 15 ("Where the arrest is made with malice . . . no immunity attaches, whether or not the arrest was made pursuant to warrant or legal process.").

Therefore, the Court DENIES City Defendants' motion to dismiss the false arrest/ imprisonment claim.

Q.      Intentional Infliction of Emotional Distress ("IIED")

City Defendants argue Plaintiff fails to allege IIED claims.  (ECF No. 100 at 21.)  In opposition, Plaintiff argues he has adequately alleged his IIED claim.  (ECF No. 75 at 26.)

To succeed on an IIED claim, Plaintiff must show that Defendants intentionally or recklessly caused him to suffer "severe or extreme emotional distress" through their "extreme and outrageous conduct." *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009).  "A defendant's conduct is outrageous when it is so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id.* (internal quotation marks omitted).

Plaintiff alleges he has suffered severe emotional distress because Defendants, including Evers, maliciously included false and misleading information and omitted exculpatory information from the arrest warrant affidavit leading to Plaintiff's prosecutions for murder.  (ECF No. 65 at ¶¶ 51, 119–121.)  A reasonable trier could decide the conduct alleged in the SAC was so outrageous as to exceed all bounds of that usually tolerated in a civilized community.  *See Morse v. Cnty. of Merced*, No. 116CV00142DADSKO, 2016 WL 3254034, at *13 (E.D. Cal. June 13, 2016) (denying a motion to dismiss IIED claim where the plaintiff alleged "individual defendants knowingly misrepresented information in order to arrest him and charge him with murder, apparently in order to exact political retribution against plaintiff's father, a local politician who had been critical of the Sheriff's Department").  While Plaintiff admittedly could have laid his allegations out more clearly within the IIED claim, the Court finds the allegations in the SAC are sufficient to survive a motion to dismiss.

Thus, the Court DENIES City Defendants' motion to dismiss the IIED claim.

**IV.    CONCLUSION**

For the foregoing reasons, the Court GRANTS in part and DENIES in part Defendants' Motions to Dismiss (ECF Nos. 68, 69) as follows:

1. County Defendants' motion (ECF No. 68) is GRANTED as follows:

   a.  GRANTED with leave to amend as to claims against Fladager, Harris, and

22

1      Ferreira based on conduct prior to October 11, 2016;

2           b.   GRANTED without leave to amend as to the official capacity claims

3                against individual County Defendants;

4           c.   GRANTED as to the retaliatory prosecution claim, with leave to amend as

5                to the claim brought under the First Amendment and without leave to

6                amend as to the claim brought under the Fourth Amendment;

7           d.   GRANTED with leave to amend as to the Fourteenth Amendment claim;

8           e.   GRANTED with leave to amend with respect to *Monell* claim based on

9                violations of the First and Fourteenth Amendment;

10          f.   GRANTED with leave to amend as to the Bane Act claim; and

11          g.   GRANTED with leave to amend as to the defamation claim.

12      County Defendants' motion is DENIED in all other respects.

13      2.   City Defendants' motion (ECF No. 69) is GRANTED as follows:

14          a.   GRANTED as to the retaliatory prosecution claim, with leave to amend as

15               to the claim brought under the First Amendment and without leave to

16               amend as to the claim brought under the Fourth Amendment; and

17          b.   GRANTED with leave to amend as to the Bane Act claim.

18      City Defendants' motion is DENIED in all other respects.

19      Plaintiff may file an amended complaint — *only* to cure deficiencies addressed in this

20  Order — not later than thirty (30) days from the electronic filing date of this Order.  If Plaintiff

21  opts not to file an amended complaint, this action will proceed on the remaining claims in the

22  SAC.  Defendants shall file responsive pleadings not later than twenty-one (21) days from the

23  electronic filing date of the amended complaint, or, if Plaintiff opts to proceed on the SAC, not

24  later than twenty-one (21) days from Plaintiff's deadline for filing an amended complaint.

25      IT IS SO ORDERED.

26  **DATED:  September 13, 2022**

27

28                                      Troy L. Nunley
                                        United States District Judge

23