1
2
3
4
5
6
7
8                         UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    EDUARDO QUINTANAR, Jr.,                  No.  1:18-cv-01403-DJC-BAM

12                  Plaintiff,

13           v.                                ORDER

14    COUNTY OF STANISLAUS, et al.,

15                  Defendants.

16

17          This action concerns Plaintiff's arrest and prosecution by Defendants in

18    connection with the alleged murder of Korey Kauffman.  Plaintiff raises a number of

19    claims pursuant to 42 U.S.C. § 1983 and California state law based on his arrest and

20    the investigation that preceded it.  Presently before the Court is Defendants' motion to

21    dismiss some of the claims raised in the Third Amended Complaint.  (Defs.' Mot. (ECF

22    No. 84).)  For the reasons stated below, Defendants' Motion to Dismiss is GRANTED IN

23    PART and DENIED IN PART.

24    **I.    Background**

25          Plaintiff, along with Daljit and Baljit Athwal, two local business owners with

26    whom Plaintiff was friends, were arrested and charged in connection with the murder

27    of Korey Kauffman.  The Athwals' arrest was based on the theory that criminal defense

28    attorney Frank Carson had hired them to murder Korey Kauffman.  Plaintiff was

                                            1

1    arrested and charged as an accessory to murder and conspiracy to obstruct justice.

2    These charges were allegedly false, and Plaintiff argues they were based on his refusal

3    to falsely implicate the Athwals in a murder for hire scheme and the fact that he

4    insulted Defendant Bunch on an illegally wiretapped phone.  More broadly, Plaintiff

5    claims that the case against himself, the Athwals, Carson, and others was the result of

6    a conspiracy to retaliate against Carson for his actions as a defense attorney.  Plaintiff

7    has filed the present suit against both county and city Defendants based on the

8    alleged violations of Plaintiff's federal civil rights as well as violations of California state

9    law.

10         The Court previously partially granted Defendants' Motion to Dismiss and

11    dismissed Plaintiff's complaint with leave to amend.  After Plaintiff submitted a Third

12    Amended Complaint ("TAC"), Defendants filed the present Motion to Dismiss.[1]

13    **II.**      **Legal Standard on Motion to Dismiss**

14         A party may move to dismiss for "failure to state a claim upon which relief can

15    be granted."  Fed. R. Civ. P. 12(b)(6).  The motion may be granted if the complaint

16    lacks a cognizable legal theory or if there are insufficient facts alleged under a

17    cognizable legal theory.  *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th

18    Cir. 2019).  The Court assumes all factual allegations are true and construes them in

19    the light most favorable to the nonmoving party.  *Steinle v. City & Cnty. of San*

20    *Francisco*, 919 F.3d 1154, 1160 (9th Cir. 2019).  A complaint must plead "sufficient

21    factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

22    *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Bell Atlantic Corp. v. Twombly*,

23    550 U.S. 544, 570 (2007).  However, the Court must "draw all reasonable inferences in

24    ////

25

26    [1] The present order is one of three issued simultaneously by the Court in related cases with similar

27    pending motions to dismiss.  *See Estate of Frank Carson and Georgia DeFilippo v. Cnty. of Stanislaus*, No. 1:20-cv-00747-DJC-BAM; *Defilippo v. Cnty. of Stanislaus*, No. 1:18-cv-00496-DJC-BAM.  Broadly speaking, these cases relate to the same series of events.  Accordingly, the analysis in each of the

28    Court's three orders is largely identical, except where otherwise noted.

1  favor of the nonmoving party." *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners*
2  *of Am.*, 768 F.3d 938, 945 (9th Cir. 2014).

3  **III.   Allegations in the Complaint**

4  In the Third Amended Complaint, Plaintiff includes dozens of pages of detailed
5  factual allegations which can be summarized as follows: Plaintiff Eduardo Quintanar,
6  Jr. was arrested on August 15, 2015, and accused of involvement in a murder for hire
7  scheme that resulted in the death of Korey Kauffman, who had been reported missing
8  in April 2012.[2]  (TAC at 6.)  The arrest was predicated on a theory that attorney Frank
9  Carson had solicited Baljit Athwal, Dalji Athwal, and their employee Robert Woody to
10 murder Kauffman.  (*Id.*)  Carson was "reviled by many in law enforcement" as well as
11 the Stanislaus County District Attorney's office ("SCDA").  (*Id.*)  Quintanar was friends
12 with the Athwals but otherwise had no connection to the investigation and did not
13 know Carson.  (*Id.*)  When questioned, Quintanar "refused to give a false statement to
14 implicate the Athwals in the murder for hire scheme" and he was later charged as an
15 accessory to murder after he "insulted Defendant [Bunch] in an illegally wiretapped
16 phone call . . . ."  (*Id.*)

17 On April 4, 2012, shortly after Kauffman's disappearance, Defendant Kirk Bunch
18 filed a report about a conversation with Michael Cooley, Carson's neighbor and
19 purportedly the last person to see Kauffman alive.  (*Id.* at 7.)  In Defendant Bunch's
20 report, Cooley "sought to implicate Carson" in Kauffman's death.  (*Id.*)  After
21 prosecutors learned of the potential link between Carson and Kauffman's
22 disappearance, the SCDA "[s]uddenly . . . became very interested in this missing
23 person case."  (*Id.*)

24 Defendants Harris and Birgit Fladager created a task force to investigate
25 Kauffman's disappearance.  (*Id.*)  Defendant Fladager supervised the investigation

26

27 _____
   [2] Plaintiff inconsistently spells Korey Kauffman's last name "Kaufman" and "Kauffman" throughout the
   TAC.  As the latter spelling is more commonly used in that document, the Court will use the spelling
28 "Kauffman" in this order.

1    team which included Defendants Bunch, Jacobson, Cory Brown, and Jon Evers. (*Id.* at

2    8.) Defendant Harris was also originally responsible for supervising these defendants

3    but was later replaced by Defendant Marlissa Ferreira after Defendant Harris "was

4    accused of jury tampering and contempt of court in a case he had with Carson as

5    [opposing] counsel." (*Id.*)

6         During the investigation, Plaintiff was never accused by any witness of

7    involvement in a crime. (*Id.* at 9.) Multiple other suspects were disregarded and

8    exculpatory evidence was not disclosed to the judge who signed Plaintiff's arrest

9    warrants. (*Id.* at 9–13.) As part of the investigation, Defendants Bunch, Jacobson, and

10   Evers conducted a seven-hour interrogation of Robert Woody after he was recorded

11   saying he had killed Kauffman. (*Id.* at 13–14.) Defendants Bunch, Jacobson, and Evers

12   informed Woody of the theory involving Carson and Plaintiff and pressured Woody

13   despite him repeatedly denying "any involvement in, or knowledge of, the Kauffman

14   murder . . . ." (*Id.* at 13.) Woody was threatened with the death penalty and life in

15   prison, and told he had an opportunity to implicate others in the murder. (*Id* at 13–

16   14.) During the interrogation, Woody took a 20-minute bathroom break,

17   accompanied by Defendants Bunch and Jacobson. (*Id.* at 14.) This period was not

18   recorded and when Woody returned, he repeated back part of the theory that Bunch,

19   Jacobson, and Evers had told him previously: "that [Woody's] employers, Baljit Athwal

20   and Daljit Athwal had murdered Kauffman and that they did it because they were

21   asked by Carson to watch over his property for thieves." (*Id.*) Defendants Bunch,

22   Jacobson, and Evers conducted several additional interviews with Woody over the

23   next two years during which they reinforced what Woody had told them. (*Id.* at 15–

24   20.) Woody eventually recanted his confession on April 24, 2014, and passed a

25   polygraph stating that he had nothing to do with Kauffman's murder. (*Id.* at 20.)

26        On August 13, 2015, Defendant Brown submitted a Ramey Warrant for

27   Plaintiff's arrest. (*Id.* at 21.) The preparation of this warrant request was "a 'group

28   consensus' between [Defendant Brown] and Defendants Fladager, Ferreira, Bunch,

Evers, and Jacobson on what charges to seek and what facts to include (and exclude) in the warrant." (*Id.*)  The ultimate warrant was a 325-page "unorganized, rambling document" that failed to establish probable cause. (*Id.*)  The arrest warrant also contained a number of "fabrications, material omissions[,] and misleading statements." (*Id.* at 22–25.)

After Plaintiff's arrest, he was charged with conspiracy to obstruct justice and as an accessory to Kauffman's murder. (*Id.* at 2.)  "A preliminary hearing began on October 13, 2015, and continued for 18 months, one of the longest in California history." (*Id.* at 25)  The charges against Plaintiff were eventually dismissed on October 24, 2017, by Superior Court Judge Barbara Zuniga "for total lack of evidentiary support." (*Id.* at 26.)

## IV.    Defendants' Motion to Dismiss

### A. Claims That Plaintiff Concedes Should be Dismissed

As an initial matter, in response to Defendants' motion, Plaintiff concedes two categories of claims should be dismissed.

First, Defendants argue that Plaintiff improperly brought suit against Defendants in their official capacity as the Court previously dismissed these claims as redundant to Plaintiff's claims against Stanislaus County. (Defs.' Mot. at 2–3.)  In their opposition, Plaintiff concedes that these official claims are improper and state they were included due to a "drafting error." (Pl.'s Opp'n (ECF No. 90) at 3.)  Plaintiff states these claims are no longer being asserted by the Plaintiff. (*Id.*)  Accordingly, claims against Fladager, Harris, Ferreira, Bunch, Jacobson, and Brown in their official capacities are dismissed.

Second, Defendants argue in their motion that Defendants Fladager and Harris are not proper parties to a *Monell* municipal liability claim. (Defs.' Mot. at 8.)  In the opposition, Plaintiff also concedes this point and voluntarily dismiss the claims against Fladager and Harris based on municipal liability. (Pl.'s Opp'n at 3.)  Accordingly, these claims are also dismissed.

**B. Timeliness of Plaintiff's Judicial Deception and False Imprisonment and False Arrest Claims against Defendants Fladager, Harris, and Ferreira**

In their motion, Defendants argue that two sets of claims are not timely under the requisite statute of limitations: Plaintiff's Fourth Amendment judicial deception claims against Defendants Fladager, Harris, and Ferreira; and Plaintiff's false arrest and false imprisonment claims against these same Defendants.  Plaintiff initially contends that his claims are timely under the *Heck* rule for accrual.  To the extent that these claims are not timely or the *Heck* rule does not apply, Plaintiff argues that statutory and equitable tolling apply.  The Court will first determine the date each set of claims was accrued, and then determine whether are subject to tolling.

**1. Accrual of Claims**

**a. Fourth Amendment Judicial Deception Claims**

Turning first to Plaintiff's Fourth Amendment judicial deception claims, as these claims are brought pursuant to section 1983, the Court must apply the statute of limitations for personal injury of the state in which the claim arose.  *Alameda Books, Inc. v. City of Los Angeles*, 631 F.3d 1031, 1041 (9th Cir. 2011)  In California, there is a two-year statute of limitations for personal injury actions.  *See* Cal. Civ. Proc. Code § 335.1.  Plaintiff does not dispute that this is the proper statute of limitations but instead contends that these claims are timely under the *Heck* rule, as well as being subject to statutory and equitable tolling.  (Pl.'s Opp'n at 4–8.)

Pursuant to the rule expressed by the Supreme Court in *Heck v. Humphrey*, 512 U.S. 477 (1994), individuals are not permitted to recover damages via section 1983 "for [an] allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid" unless the plaintiff proved that "that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus . . . ."  *Id.* at 486–87.  Where there are ongoing

1    state court proceedings, the resolution of which are required to satisfy the *Heck* rule,

2    the Supreme Court has held that the cause of action "accrues only once the

3    underlying criminal proceedings have resolved in the plaintiff's favor." *McDonough v.*

4    *Smith*, 139 S. Ct. 2149, 2156 (2019).  However, accrual occurs "when the plaintiff has a

5    complete and present cause of action, that is, when the plaintiff can file suit and obtain

6    relief." *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (citations omitted).  To determine

7    whether a Plaintiff has a complete and present cause of action, the Court must look to

8    the analogous common law tort to determine when the cause of action accrued.  *Id.*

9         While most Fourth Amendment violations accrue when "the wrongful act

10   occurs," *Belanus v. Clark*, 796 F.3d 1021, 1026 (9th Cir. 2015), the Ninth Circuit has

11   clarified that "judicial deception" claims accrue differently owing to the need for the

12   party to be able to view the affidavit supporting a warrant before pursuing an action

13   on these grounds.  *Klien v. City of Beverly Hills*, 865 F.3d 1276, 1279 (9th Cir. 2017).

14   As such, the Court is required to apply the discovery rule which "requires that judicial

15   deception claims begin accruing when the underlying affidavit is reasonably

16   available." *Id.*

17        Here, accrual of Plaintiff's deception claims would be at the point that the

18   affidavit underlying the warrant for Plaintiff's arrest was available.  Both parties agree

19   that this occurred in 2015.[3]  (Defs.' Mot. at 3; Pl.'s Opp'n at 4 n.1.)  As Plaintiff's judicial

20   deception claims would have accrued at this point, Plaintiff's claims are not saved by

21   the *Heck* rule as Plaintiff did not file the present action until October 11, 2018.  Thus,

22   unless Plaintiff's judicial deception claims are tolled, they are not timely.

23   ////

24   ////

25

26   [3] Plaintiff attempts to introduce some ambiguity as to when the arrest warrant was available, suggesting
     in his Opposition that "it *may* have become reasonably available to Plaintiff sometime after October

27   2015." (Opp. at 4, n. 1 (emphasis in original).)  That ambiguity, however, is inconsistent with the
     allegation in the operative complaint that the entire warrant was released online following the press

28   conference announcing the charges.  (TAC at ¶ 43.)

### b. False Arrest/Imprisonment Claim

Turning next to Plaintiff's sixth cause of action for false arrest and false imprisonment, this claim was brought under California Government Code sections 820, 820.4, and 815.2, not section 1983.  As such, it is subject to the rules for accrual for the cause of action under state law.  *See Jones v. City of Los Angeles*, No. 05-cv-01778-DSF, 2006 WL 8434718, at *8–9 (C.D. Cal. Jan. 5, 2006).

Under California law, false arrest and imprisonment claims are subject to a one-year statute of limitations.[4]  Cal. Civ. Proc. Code § 340; *Bulfer v. Dobbins*, No. 09-cv-1250-JLS-POR, 2011 WL 530039, at *13–14 (S.D. Cal. Feb. 7, 2011) ("Plaintiff's false arrest claim is barred by the one-year statute of limitations applicable to false imprisonment claims."); *see Milliken v. City of South Pasadena*, 96 Cal. App. 3d 834, 840 (1979) (stating false arrest and imprisonment are subject to a one-year statute of limitations pursuant to section 340).  Though a false arrest and imprisonment claim may arise at the time of arrest, in California "the statute of limitations [does] not commence to run until [plaintiff's] discharge from jail."  *Milliken*, 96 Cal. App. 3d at 840.

Under these rules, Plaintiff's false arrest and imprisonment claims would have begun to run on the date Plaintiff was released from custody.  In the operative complaint, Plaintiff states he was released from custody on August 15, 2015 and acknowledges this is the date of accrual for his false imprisonment claims.  (TAC at ¶ 66.)  As such, this action was filed well beyond the one-year statute of limitations for these sorts of claims.  The *Heck* accrual rules are also inapplicable to these claims as *Heck* is specific to actions brought under section 1983.  *See Heck*, 512 U.S. at 486–87; *see also Jones v. City of Los Angeles*, No. 05-cv-1778-DSF, 2006 WL 8434718, at *8

////

---

[4] As these are claims against government employees, they are also subject to the limitations of the California Tort Claims Act in addition to the statute of limitations.  Compliance with the California Tort Claims Act as to these claims is addressed separately below.

(C.D. Cal. Jan. 5, 2006) (distinguishing California state law false arrest claims from section 1983 claims).

Accordingly, Plaintiff's false arrest/imprisonment claims against Defendants Fladager, Harris, and Ferreira are untimely unless statutory or equitable tolling is applicable.

### 2. Statutory Tolling

Plaintiff argues that his judicial deception claims as well as his false arrest and imprisonment claims should also be subject to statutory tolling under California Government Code section 945.3. (Pl.'s Opp'n at 5–6.) Defendants contend that this statute is not applicable to Defendants Fladager, Harris, and Ferreira as they are not "peace officers" within the meaning of this statute. (Defs.' Reply (ECF No. 123) at 3–4.)

"For actions under 42 U.S.C. § 1983, courts apply the forum state's statute of limitations for personal injury actions, along with the forum state's law regarding tolling, including equitable tolling, except to the extent any of these laws is inconsistent with federal law." *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004). Section 945.3 provides that a defendant in a criminal action may not bring a civil suit "against a peace officer or the public entity employing a peace officer based upon conduct of the peace officer relating to the offense for which the accused is charged . . . . while the charges against the accused are pending before a superior court." Cal. Gov't Code § 945.3. Section 945.3 further tolls these civil claims "during the period that the charges are pending." *Id.* Whether this statute properly applies to Defendants Fladager, Harris, and Ferreira depends on whether these defendants, who are all employed as attorneys by the SCDA (TAC at ¶ 59), are properly considered "peace officers" under section 945.3. Defendants suggest that this Court apply the definition of "peace officer" found within California Penal Code § 830.1(a). (Defs.' Reply at 3.) Plaintiff argues that the definition provided by Penal Code section 830.1(a) is not meant to apply to Government Code section 945.3 as the latter statute makes no reference to Penal Code section 830.1(a). (Pl.'s Opp'n at 6.) Plaintiff also

1  opposes on the grounds that, within the "plain meaning" of section 945.3, Defendants

2  Fladager, Harris, and Ferreira are peace officers, regardless of the "literal language" of

3  the statute. (*Id.* at 5–6.)

4         Other courts in this district have previously declined to apply section 954.3 to

5  one of these three Defendants, Defendant Fladager, based on the same conduct on

6  the grounds that "[p]rosecutors are not considered 'peace officers' under state law."

7  *Athwal v. Cnty. of Stanislaus*, No. 1:15-cv-00311-TLN-BAM, 2022 WL 4237713, at *4

8  (E.D. Cal. Sep. 14, 2022); *see also Wells v. Cnty. of Stanislaus*, 1:20-cv-00770-TLN-

9  BAM, 2022 WL 4237538, at *4.  The Court reaches a similar conclusion here.  Courts

10  have consistently looked to section 830.1(a) when determining whether an individual

11  is a peace officer for the purposes of applying section 945.3.  *See Pontillo v. Stanislaus*

12  *Cnty.*, 1:16-cv-01834-DAD-SKO2017 WL 3394126, at *5 (E.D. Cal. Aug. 8, 2017);

13  *Webster v. County of Los Angeles*, No. 12-cv-656-ODW-MRW, 2012 WL 2071781, at

14  *2 (C.D. Cal. June 6, 2012) *report and recommendations adopted by* 2012 WL

15  2071765 (C.D. Cal. June 7, 2012); *Kelley v. Allen*, 2:10-cv-00557-GEB-DAD, 2011 WL

16  5102994, at *2 (E.D. Cal. Oct. 26, 2011).  Section 830.1(a) does not designate an

17  attorney employed an attorney employed in the office of a district attorney as a peace

18  officer.  Cal. Pen. Code § 830.1(a); *See Athwal*, 2022 WL 4237713, at *4; *Wells*, 2022

19  WL 4237538, at *4.  Additionally, though section 830.1(a) does provide that

20  investigators for a district attorney's office are peace officers, this only applies to "an

21  inspector or investigator *employed in that capacity*" by the office.  Neither party

22  contends that Defendants Fladager, Harris, and Ferreira were employed as

23  investigators and, though Plaintiff has claimed that these defendants were *acting* as

24  investigators, section 830.1(a) plainly only identifies as a peace officer those officially

25  *employed* as an investigator by a district attorney's office.

26         Plaintiff suggests that this Court should consider Defendants Fladager, Harris,

27  and Ferreira to be peace officers as failing to do so would defeat the plain purpose of

28  section 945.3. (Pls' Opp'n at 5–6.)  In support of this contention, Plaintiff relies on

1   *Cross v. City & Cnty. of San Francisco*, 386 F. Supp. 3d 1132 (Cal. N.D. 2019).  The

2   court in *Cross* determined that they needed to go beyond the plain meaning of

3   section 945.3 in order to properly apply the statute in line with its purpose.  *Id.* at

4   1143–44.  The concern in *Cross* was with the term "superior court" and whether it

5   should be read as a reference to any trial court, regardless of the name of the court.

6   *Id.* at 1144–45.  In reaching its decision, the Court relied heavily on the legislative

7   history of section 945.3, which clearly showed that the California legislature intended

8   the statute to apply to criminal actions in any trial court.  *Id.* at 1144–45.

9          By contrast, Plaintiff here has not provided any evidence that the current

10   definition of a peace officer does not align with the California legislature's intent.

11   Moreover, unlike the term "superior court", there does appear to be any sort of

12   ambiguity regarding how "peace officer" is to be defined under California law.

13   Section 830.1 provides a detailed list of individuals to be considered peace officers

14   and, as noted by Plaintiff, the California legislature has not hesitated to update this list

15   to cover the exact individuals they wish to be covered.  (*See* Pl.'s Opp'n at 6 (listing

16   various changes to the individuals covered by section 830.1).)  Other sub-sections of

17   the California Penal Code even expressly differentiate between peace officers as

18   defined by Section 830.1 and "[an] attorney employed by . . . a county office of a

19   district attorney . . . ."  Cal. Pen. Code § 832.9.  There is no indication that Defendants

20   Fladager, Harris, and Ferreira should properly be considered peace officers for

21   purposes of section 945.3.  For this Court to make this decision would be to override

22   what appears the California Legislature's clear decisions about who is, and is not, a

23   peace officer under California law.

24          Accordingly, statutory tolling under California Government Code section 954.3

25   does not apply to Plaintiff's claims against Defendants Fladager, Harris, and Ferreira as

26   those defendants are not peace officers within the meaning of California law.

27   ////

28   ////

11

1        **3. Equitable Tolling**

2        Plaintiff argues in the alternative that equitable tolling should apply to Plaintiff's

3   claims of false imprisonment/arrest and judicial deception against Defendants

4   Fladager, Harris, and Ferreira.  (Pl.'s Opp'n at 7.)

5        As noted above, in section 1983 actions, the Court applies the forum state's

6   statute of limitations for personal injury actions, including the state's equitable tolling

7   law so long as it is consistent with federal law.  *Jones*, 393 F.3d at 927.  Equitable

8   tolling is applied by California courts where it is necessary "to prevent the unjust

9   technical forfeiture of causes of action, where the defendant would suffer no

10  prejudice."  *Id.* at 928 (citations omitted) (citing *Lantzy v. Centex Homes*, 31 Cal. 4th

11  363 (2003)).  "Under California law, a plaintiff must meet three conditions to equitably

12  toll a statute of limitations: (1) defendant must have had timely notice of the claim; (2)

13  defendant must not be prejudiced by being required to defend the otherwise barred

14  claim; and (3) plaintiff's conduct must have been reasonable and in good faith."  *Fink*

15  *v. Shedler*, 192 F.3d 911, 916 (9th Cir. 1999) (citation omitted).

16       Despite Plaintiff's arguments to the contrary, this claim fails at the first

17  requirement.  Relying on *McDonald v. Antelope Valley Community College District*, 45

18  Cal. 4th 88 (2008), Plaintiff argues that Defendants were given adequate notice of the

19  claim and are not prejudiced by defending the claim here since the Defendants were

20  "involved in the investigation and the events leading to the initiation of the criminal

21  proceeding."  (Pl.'s Opp'n at 7–8.)  In *McDonald*, the California Supreme Court held

22  that a claim under the state's Fair Employment and Housing Act was equitably tolled

23  while the plaintiff voluntarily pursued an internal administrative procedure.

24  *McDonald*, 45 Cal. 4th at 96.  The Court observed that the "filing of an administrative

25  claim, whether mandated or not, affords a defendant notice of the claims against it so

26  that it may gather and preserve evidence, and thereby satisfies the principal policy

27  behind the statute of limitations."  *Id.* at 102.

28  ////

1    The equitable tolling identified in *McDonald* does not apply here.  *McDonald*

2  considered several circumstances where this type of equitable tolling might apply:

3  "where one action stands to lessen the harm that is the subject of a potential second

4  action; where administrative remedies must be exhausted before a second action can

5  proceed; or where a first action, embarked upon in good faith, is found to be

6  defective for some reason."  *Id.* at 100.  None of these factors are present here.

7  Plaintiff was the subject of the underlying criminal action; it did not involve Plaintiff

8  himself pursuing one of several legal remedies.  *Compare id.* ("Broadly speaking, the

9  doctrine applies when an injured person has several legal remedies and, reasonably

10  and in good faith, pursues one.") (internal citations and quotations omitted).  Plaintiff

11  points to no case applying equitable tolling to a second suit where the first suit

12  involved a criminal complaint against defendants who were plaintiffs in a later civil

13  suit.

14    Even if the doctrine theoretically applied, the other requirements for equitable

15  tolling are not met in this case.  Plaintiff suggests that Defendants had timely notice of

16  the claims in this case as they were "all intimately involved in the investigation and the

17  events leading to the initiation of the criminal proceeding."  (Pl.'s Opp'n at 7.)

18  Defendants' involvement in the criminal action against Plaintiff holds no bearing on

19  whether they were put on notice of Plaintiff's claims.  The claims present in the first

20  case were criminal charges against Plaintiff; nothing about this prior action or the

21  claims involved would put Defendants on notice of the claims brought here.  This is

22  not a situation "where a defendant in the second claim was alerted to the need to

23  gather and preserve evidence by the first claim even if not nominally a party to that

24  initial proceeding."  *Cervantes v. City of San Diego*, 5 F.3d 1273, 1276 n.3 (9th Cir.

25  1993).  As such, equitable tolling is not applicable to Plaintiff's criminal proceedings as

26  Defendants Fladager, Harris, and Ferreira were not given timely notice of Plaintiff's

27  claims in those proceedings.  *See Fink*, 192 F.3d at 916.

28  ////

1   Given the above, Defendants' motion to dismiss as untimely Plaintiff's Fourth

2   Amendment Judicial Deception claims as well as Plaintiff's false imprisonment and

3   arrest claims as to Defendants Fladager, Harris, and Ferreira is granted.

4   **C.  Failure to Comply with the California Tort Claims Act**

5   Defendants also argue that Plaintiff's false arrest and false imprisonment claims

6   are barred by a failure to comply with the California Tort Claims Act ("CTCA").  Parties

7   bringing a suit for monetary damages against a public entity under California law must

8   first comply with CTCA which requires "the timely presentation of a written claim and

9   the rejection of the claim in whole or in part." *Mangold v. California Pub. Utilities*

10  *Comm'n*, 67 F.3d 1470, 1477 (9th Cir. 1995); *see Creighton v. City of Livingston*, 628

11  F. Supp. 2d 1199, 1225 (E.D. Cal. 2009).  Failure to comply with the CTCA bars a party

12  from bringing the relevant state law claims. *Creighton*, 628 F. Supp. 2d at 1225.  The

13  complaint need not only plead compliance with the CTCA but also "allege facts

14  demonstrating or excusing compliance with the claim presentation requirement.

15  Otherwise, his complaint ... fail[s] to state facts sufficient to constitute a cause of

16  action." *Id.* (citations omitted).  Personal injury claims are required to be presented

17  within six months of the accrual of the cause of action.  Cal. Gov't Code § 911.2.

18  Plaintiff's false arrest and imprisonment claims against Defendants Fladager,

19  Harris, and Ferreira accrued at the time Plaintiff was released from jail. *Milliken*, 96

20  Cal. App. 3d at 840.  Plaintiff states that they filed claims, in compliance with section

21  911.2, on April 20, 2018.  (TAC at ¶ 60; Pl.'s Opp'n at 9.)  This is substantially more

22  than six months after Plaintiff's claims accrued upon their release from county jail in

23  2015.

24  Plaintiffs' failure to present their claims is likely moot as a result of the Court's

25  finding above that Plaintiff's false imprisonment and arrest claims against Defendants

26  Fladager, Harris, and Ferreira are untimely.  However, to the extent those claims are

27  not untimely, based on the allegations in the TAC and the opposition, Plaintiff has also

28  failed to comply with the CTCA.  *See* Cal. Gov't Code § 911.2.  Accordingly,

14

1    Defendants' motion to dismiss Plaintiff's false imprisonment and arrest claims against

2    Defendants Fladager, Harris, and Ferreira on these grounds is also granted.

3         **D.  Prosecutorial Immunity under Cal. Gov't Code § 821.6**

4              Defendants ask that the Court dismiss Plaintiff's claims for intentional infliction

5    of emotional distress and violation of California Civil Code section 52.1 on the basis of

6    Defendants' alleged prosecutorial immunity under California Government Code

7    section 821.6.  This provision provides immunity to liability for public employees

8    where the injury was "caused by his instituting or prosecuting any judicial or

9    administrative proceeding within the scope of his employment, even if he acts

10   maliciously and without probable cause."  Cal. Gov't Code § 821.6.  This immunity

11   does not extend to "liability for false arrest or false imprisonment" as such

12   confinement is unlawful or without process.  *Bolbol v. City of Daly City*, 754 F. Supp.

13   2d 1095, 1118 (N.D. Cal. 2010).  This exception to section 821.6 applies to other

14   claims that are based on a false arrest or imprisonment.  *Cousins v. Lockyer*, 568 F.3d

15   1063, 1071 (concluding section 821.6 was inapplicable not only to a false

16   imprisonment claim, but also to "related state causes of action"); *see also Bolbol*, 754

17   F. Supp. 2d at 1119 (applying this rule to a Bane Act claim); *Warren v. Marcus*, 78 F.

18   Supp. 3d 1228, 1250 (N.D. Cal. 2015) (denying section 821.6 immunity for intentional

19   infliction of emotional distress claims based on a wrongful detention).  Defendants

20   argue that Plaintiff's claims are not solely predicated on false arrest and imprisonment

21   so this exception to section 821.6 immunity should not apply.  Plaintiff argues that

22   doing so at this stage would be premature as the Court has not yet found that there

23   was probable cause to justify the arrest.

24              Plaintiff's claims are closely related and intertwined with their alleged false

25   arrest and false imprisonment.  Defendants may be correct that this is not the sole

26   basis for Plaintiff's intentional infliction of emotional distress and Bane Act claims.

27   However, as alleged, Plaintiff's claims all stem from their eventual alleged false arrest

28   and imprisonment.  Moreover, the fifth cause of action for a violation of the Bane Act

                                                   15

1  expressly mentions Plaintiff's arrest (TAC ¶ 111), as does the seventh cause of action

2  for intentional infliction of emotional distress (TAC ¶¶ 133, 134).  At this stage of the

3  proceedings, attempting to extricate the portions of those claims that do not involve

4  Plaintiff's false arrest – if there are any – would require detailed factual determinations

5  that are not appropriate and cannot be made at this stage.  Though the Court may still

6  determine that Defendants are entitled to section 821.6 immunity at a later stage of

7  these proceedings, based on the allegations present in the TAC, the Court does not

8  find that Defendants Fladager, Harris, and Ferreira are entitled to section 821.6

9  immunity as to Plaintiff's claims for intentional infliction of emotional distress and

10  violation of California Civil Code section 52.1 at this stage of the proceedings.

11  **E.  Plaintiff's Fourteenth Amendment Claim as to Defendants Fladager,**

12  **Harris, and Ferreira**

13  The third cause of action in Plaintiff's TAC is brought under section 1983 for

14  violation of Plaintiff's  Fourteenth Amendment rights.  (TAC at 48–51.)  Plaintiff claims

15  that Defendants Fladager, Harris, Ferreira, Bunch, Jacobson, Evers, and Brown

16  violated Plaintiff's due process rights by fabricating evidence against them, resulting in

17  Plaintiff being arrested.  (*Id.* at 50.)  Defendants move to dismiss these claims as to

18  Defendants Fladager, Harris, and Ferreira on the grounds that Plaintiff has failed to

19  state a cognizable Fourteenth Amendment claim as to these defendants.

20  A Fourteenth Amendment fabrication of evidence claim, sometimes called a

21  *Devereaux* claim, is a claim that "there is a clearly established constitutional due

22  process right not to be subjected to criminal charges on the basis of false evidence

23  that was deliberately fabricated by the government."  *Devereaux v. Abbey*, 263 F.3d

24  1070, 1074–75 (9th Cir. 2001) (en banc); *See Spencer v. Peters*, 857 F.3d 789, 793 (9th

25  Cir. 2017).  To state a *Devereaux* claim, the violation of due process must result in a

26  deprivation of liberty and the plaintiff must show that "(1) the defendant official

27  deliberately fabricated evidence and (2) the deliberate fabrication caused the

28  plaintiff's deprivation of liberty."  *Spencer*, 847 F.3d at 798 (citation omitted).  A

16

1  plaintiff must establish the second causal element by proving "that (a) the act was the

2  cause in fact of the deprivation of liberty, meaning that the injury would not have

3  occurred in the absence of the conduct; and (b) the act was the 'proximate cause' or

4  'legal cause' of the injury, meaning that the injury is of a type that a reasonable person

5  would see as a likely result of the conduct in question." *Id.*

6      Defendants initially argue that Defendants Fladager, Harris, and Ferreira are

7  entitled to prosecutorial immunity as to these claims.  Plaintiff's Fourteenth

8  Amendment claims as to Defendants Fladager, Harris, and Ferreira appear to span a

9  large time period and concern a number of different alleged acts.  To the extent these

10 allegations concern these Defendants' preparation of the arrest warrant application,

11 actions during preliminary hearings, and disclosure of discovery, these actions are

12 squarely within the protection of absolute prosecutorial immunity as they are

13 "intimately associated with the judicial phase of the criminal process." *Lacey v.*

14 *Maricopa Cnty.*, 693 F.3d 896, 912 (9th Cir. 2012); *see Burns v. Reed*, 500 U.S. 478,

15 492 (1991) (holding that a prosecutor was granted absolute immunity for the

16 presentation of evidence in support of a search warrant at a probable cause hearing);

17 *Kalina v. Fletcher*, 522 U.S. 118, 129 (1997) (holding that a prosecutor's activities in

18 preparing and filing charging documents are protected by absolute immunity); *Broam*

19 *v. Bogan*, 320 F.3d 1023, 1030 (9th Cir. 2003) (finding that a prosecutor's decision not

20 to turn over exculpatory material before, during, or after trial was "an exercise of the

21 prosecutorial function and entitles the prosecutor to absolute immunity from a civil

22 suit for damages.").

23      However, Plaintiff's Fourteenth Amendment claims also extend well before the

24 filing of charging documents and concern their conduct during the investigation into

25 Kauffman's disappearance. (*See* TAC at 26–32.)  For example, Plaintiff alleges that

26 these Defendants "advised the officers and investigators throughout the investigation"

27 and that they acted outside their role as prosecutors during the investigation by

28 interviewing witnesses, coercing testimony, fabricating evidence, and otherwise

1  supervising the investigation.  (*See id.*)  These alleged acts appear to be outside the

2  judicial phase of the criminal process and are not covered by the absolute immunity

3  provided to prosecutors.  *See Lacey*, 693 F.3d at 912 ("prosecutors are not necessarily

4  immune for actions taken outside this process, including actions logically–though not

5  necessarily temporally–prior to advocacy, such as those 'normally performed by a

6  detective or police officer,' like gathering evidence, and those separate from the

7  process, like providing legal advice to the police.")  As the Ninth Circuit has noted,

8  "[d]etermining what functions are prosecutorial is an inexact science."  *Id.*  While it is

9  possible that Defendants Fladager, Harris, and Ferreira are entitled to prosecutorial

10  immunity as to the entirety of Plaintiff's Fourteenth Amendment claims, at this stage,

11  the Court must take as true the allegations within the complaint.  *Steinle*, 919 F.3d at

12  1160.  Under this standard, Plaintiff's allegations as to Defendants Fladager, Harris,

13  and Ferreira's involvement in the investigation are sufficient to conclude that they are

14  not entitled to prosecutorial immunity for at least some of their alleged actions.

15       Defendants more broadly contend that Plaintiff's claims regarding the

16  withholding of evidence are insufficient as the Court previously determined that

17  Plaintiff did not adequately allege they were detained for an "unusual length of time"

18  and because Plaintiff has failed to allege facts to support a supervisor liability theory

19  as to the withholding of evidence.  (Defs.' Mot. at 7.)  The Court does not need to

20  reach these issues here as the withholding of evidence during pretrial proceedings is

21  plainly covered by prosecutorial immunity, as determined above.  *Broam*, 320 F.3d at

22  1030.

23       Accordingly, the Court grants Defendants' motion to dismiss Plaintiff's

24  Fourteenth Amendment claims against Defendants Fladager, Harris, and Ferreira as to

25  any acts that occurred during the judicial phase of criminal proceedings including the

26  preparation of the arrest warrant, the withholding of evidence during pretrial

27  proceedings, and any actions they took as a prosecutor in connection with preliminary

28  proceedings.  However, the Court denies Defendants' motion to dismiss these claims

1   as they relate to the involvement of Defendants Fladager, Harris, and Ferreira in the

2   earlier three-year investigation that, at this stage, appears to fall outside of

3   prosecutorial immunity.

4       **F.  Plaintiff's Bane Act Claims**

5       In Defendants' motion to dismiss, Defendants argue that Plaintiff has failed to

6   state a cognizable Bane Act claim under California Civil Code section 52.1 against all

7   defendants as Plaintiff has not alleged that any defendant acted with specific intent to

8   violate Plaintiff's constitutional rights.  (Defs.' Mot. at 7–8.)  Plaintiff contends that he

9   has satisfied the specific intent element through allegations of threats, intimidation,

10  and coercion by each Defendant and the claim that the Defendants were involved in a

11  conspiracy to deny Plaintiff's rights.  (Pl.'s Opp'n at 16–17.)

12      Taking the allegations in the TAC as true, the Court finds Plaintiff has alleged

13  sufficient facts to support that Defendants acted with specific intent to violate Plaintiff's

14  constitutional rights.  The Bane Act provides a private cause of action against anyone

15  who "interferes by threats, intimidation, or coercion, or attempts to interfere by

16  threats, intimidation, or coercion, with the exercise or enjoyment by an individual or

17  individuals of rights secured by the Constitution or laws of the United States, or laws

18  and rights secured by the Constitution or laws of California."  Cal. Civil Code § 52.1(a).

19  Plaintiff is correct that "a reckless disregard for a person's constitutional rights is

20  evidence of a specific intent to deprive that person of those rights."  *Reese v. Cnty. of*

21  *Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018) (internal citations and quotations

22  omitted).  The complaint, as currently formulated, clearly asserts facts to support the

23  claim that Defendants acted with reckless disregard to Plaintiff's constitutional rights.

24  Specifically, Plaintiff alleges that Defendants prepared and requested arrest warrants

25  for Plaintiff despite knowing the evidence to support such an arrest was insufficient.

26  Plaintiff further alleges that Defendants did this in order to coerce Plaintiff into

27  fabricating evidence implicating Carson in furtherance of their plan of retaliation

28  against him.  (TAC at ¶ 117.)  At this stage of these proceedings, these allegations are

1  sufficient to show that Defendants acted with reckless disregard to Plaintiff's right to

2  be free from unreasonable seizure.  *Reese*, 888 F.3d at 1043.  Accordingly,

3  Defendants' motion to dismiss these claims is denied.

**CONCLUSION**

5       This is an unusual case.  The Court is cognizant of the fact that a Superior Court

6  Judge dismissed the underlying criminal charges as to the Plaintiff in this action, which

7  necessarily lends support to the allegations in the Complaint, making them more

8  "plausible on their face" than they might have otherwise been.  *Cf. Iqbal*, 556 U.S. at

9  678.  Whether Plaintiff will be able to produce sufficient evidence to support those

10  allegations in order to survive summary judgment or prevail at trial is of course a

11  question to be left for another day.

12       In accordance with the above and good cause appearing, IT IS HEREBY

13  ORDERED that Defendants' Motion to Dismiss (ECF No. 84) is GRANTED IN PART and

14  DENIED IN PART as follows:

15      1. Defendants' Motion to Dismiss claims against Fladager, Harris, Ferreira,

16         Bunch, Jacobson, and Brown in their official capacity is GRANTED;

17      2. Defendants' Motion to Dismiss the *Monell* claims against Fladager and

18         Harris is GRANTED;

19      3. Defendants' Motion to Dismiss Plaintiff's Judicial Deception, False

20         Imprisonment, and False Arrest Claims against Defendants Fladager, Harris,

21         and Ferreira as untimely is GRANTED;

22      4. Defendants' Motion to Dismiss Plaintiff's False Imprisonment and False

23         Arrest Claims against Defendants Fladager, Harris, and Ferreira for failure to

24         comply with the California Tort Claims Act is GRANTED;

25      5. Defendants' Motion to Dismiss claims against Defendants Fladager, Harris,

26         and Ferreira for intentional infliction of emotional distress and violation of

27         California Civil Code § 52.1 on the basis of immunity under Cal. Gov't Code

28         § 821.6 is DENIED;

6. Defendants' Motion to Dismiss Plaintiff's Fourteenth Amendment claims against Defendants Fladager, Harris, and Ferreira on the basis of prosecutorial immunity is GRANTED related to actions taken during judicial proceedings, but is DENIED where the claims relate to the involvement of Defendants in the earlier investigation; and

7. Defendants' Motion to Dismiss Plaintiff's claims under California Civil Code section 52.1 against Defendants Fladager, Harris, and Ferreira is DENIED.

To the extent the Court has dismissed claims in the Third Amended Complaint, these claims are dismissed without leave to amend.  Plaintiff has had several opportunities to cure the defects identified above, and the Court finds that any further amendments would be futile. *Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau*, 701 F.2d 1276, 1293 (9th Cir. 1983) (holding that while leave to amend shall be freely given, the court does not have to allow futile amendments).

IT IS SO ORDERED.

Dated:   **September 8, 2023**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC1 – quintanar18cv01403.mtd

21